<u>**NOT FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 7 |
| | Case No. 03-37171 |
| JEFFREY LEE TOGNETTI, | |
| Debtor. | |

-----------------------------------------------------------x

| | |
|---|---|
| ERIC ROSS and RACE CAPITAL | |
| GROUP, | Case No. 04-9400 (cgm) |
| Plaintiffs, | |
| -against- | |
| JEFFREY LEE TOGNETTI, | |
| SYNDICATE TRADING, LLC, | |
| INVESTMENT SERVICES CAPITAL | |
| CORP. d/b/a INVESTMENT SERVICES | |
| and TRADING, LLC d/b/a ICAP, LENO | |
| TOGNETTI, LEIGH A. TOGNETTI | |
| a/k/a LEIGH A. DEMELO | |
| and DOES 1 THROUGH 10, INCLUSIVE, | |
| Defendants. | |

-----------------------------------------------------------x

| | |
|---|---|
| RACE CAPITAL GROUP LLC and | |
| ERIC ROSS, | Case No. 04-9165 (cgm) |
| Plaintiffs, | |
| -against- | |
| JEFFREY LEE TOGNETTI, | |
| Debtor/Defendant. | |

-----------------------------------------------------------x

1

**A P P E A R A N C E S:**

Eric Ross
Plaintiff *pro se*

Steven Landy, Esq.
Landy & Landy, LLP
Attorneys for Plaintiff Race Capital Group, LLC
405 Park Avenue, Suite 1704
New York, New York  10022

Harvey S. Barr, Esq.
Barr & Haas, LLP
Attorneys for Debtor Jeffrey A. Tognetti
664 Chestnut Ridge Road
P.O. Box 664
Spring Valley, New York  10977

Howard M. Gurock, Esq.
Kurtzman, Matera, Gurock, Scuderi & Karben, LLP
Attorneys for Defendant Leigh A. Tognetti a/k/a
Leigh A. DeMelo
2 Perlman Drive – Suite 301
Spring Valley, New York  10977

## MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**CECELIA G. MORRIS, U.S.B.J.:**

This memorandum decision is the product of almost three years of acrimonious

litigation among these parties, encompassing two separate but related bankruptcy filings

and several assorted adversary proceedings.[1]  The parties' behavior in these litigations

has exacerbated the animosity that already existed between them prior to commencement

---

[1] In addition to Jeffrey Tognetti's Chapter 7 case, case number 03-37171, the following adversary proceedings have been filed against Mr. Tognetti: Kay v. Tognetti, case number 04-9084; Deutsch, Coffey & Metz LLP v. Tognetti, case number 04-9164;  and Race Capital Group, LLC and Eric Ross v. Jeffrey Lee Tognetti, case number 04-9165.  The instant adversary proceeding, Ross v. Syndicate Trading, LLC, Investment Services Capital Corp. a/k/a ICAP; Investment Services and Trading, LLC a/k/a ICAP; Jeffrey Tognetti and Leigh A. Tognetti a/k/a Leigh A. DeMelo, case number 04-9400, was removed to this Court through the auspices of Debtor's counsel.

of the Chapter 11 case. Defendants' counsel have been less than enthusiastic[2] in pursuing
and supporting their clients' legal positions, and some parties have demonstrated a
propensity for filing, on the eve of scheduled hearings, a proliferation of documents,
letters and pleadings for the Court's consideration, requesting a myriad of novel and
theretofore un-requested relief. The Court, having not been given the opportunity to
review these submissions prior to the scheduled hearing, would have no choice but to
adjourn the hearings, to allow opposing counsel to respond and for the Court to give the
latest arguments due consideration. When the adjourned hearing date would approach,
once again, a flurry of documents would be filed, seeking yet additional relief, and the
cycle would begin anew.[3] Each time the Court was prepared to rule on an issue or
submission a new stance would be assumed, or an adjournment sought. To confuse
matters further, Plaintiffs have demonstrated a proclivity for filing documents pertaining
to a single matter on the electronic case management system docket of all of the cases;
i.e., Plaintiff Eric Ross' *letter objecting to stipulation of settlement between Sidney Kay
and Jeffrey Tognetti*, was filed not only in the case *Sidney and Sandra Kay v. Jeffrey Lee
Tognetti*, case number 04-9084, ECF Docket No. 27, but also filed on the Tognetti
Chapter 7 docket, case number 03-37171, ECF Docket No. 129; in case number 04-9400,
ECF Docket No. 125; as well as the unrelated adversary proceedings filed by Plaintiffs,
*see* case number 04-9165, ECF Docket No. 45. Plaintiff Eric Ross has been represented
by three different attorneys in these matters, and has recently been proceeding *pro se*.

---

[2] Debtor's counsel has repeatedly stated that Debtor is merely a "hanger on" in this adversary proceeding,
*see e.g.* Transcript of August 23, 2005 hearing, p. 11, l. 15-23, yet Debtor continues to object to the relief
sought by Plaintiff.
[3] *See e.g.* case number 04-9400, ECF Docket No. 58, Supplemental Motion to Reopen Adversary
Proceeding filed December 17, 2006 by Plaintiff Eric Ross, containing exhibits A-Z, and responsive
documents filed by all parties, found at docket entry numbers 60, 61, 62, 63, 64, 65, 67, 68, 69, 70, 71, 72,
73, 75, 76, 78, and 79.

The Tognetti matters have progressed in this manner for close on three years.   True to experience, with respect to the instant motion, the parties have paid no attention to this Court's directives regarding page lengths. Subsequent to the filing of the instant motion for summary judgment (the second summary judgment motion filed by Plaintiffs, notwithstanding the fact that the Court never ruled on the first one), correspondence containing accusations and invectives have been flung through the mails, both regular and electronic; suffice it to say, emotions have run very high.   Nor were Court-imposed briefing schedules adhered to.   With this background in mind, the Court nevertheless turns to the merits of the Ross/Tognetti controversy, with the firm belief that the time is long past to excuse procedural requirements.   In so doing, the Court has culled through volumes of irrelevant and inflammatory statements to consider those issues that are purely legal, as opposed to procedural, or, more frequently, emotional.   In the interest of expediency, the Court's decision will resolve only those legal issues necessary to the outcome of the removed adversary proceeding 04-9400, all raised by Plaintiff; to wit: the request that the Court permissively abstain from hearing this removed proceeding; the motion to dismiss Debtor's Chapter 7 case; motion to deny Debtor's discharge; motion for a determination that Debtor's obligation to Plaintiffs is nondischargeable; and the motion to disqualify Mr. Barr as counsel for Debtor.

For the reasons set forth below, the Court grants Plaintiff's motion to the extent that the Court will permissively abstain from hearing this adversary proceeding to allow Plaintiff to return to state court and enforce his rights pursuant to the Settlement Stipulation (described *infra*).  The Court also lifts the automatic stay to allow Plaintiff to pursue his rights in state court with regard to the Debtor and the non-debtor defendants

Leigh Ann DeMelo and Lino Tognetti, with the caveat that Plaintiff must return to this

Court before enforcing any judgment against Debtor, as a determination as to whether the

judgment may be dischargeable must be made before enforcement of any pre-petition

judgment against a debtor that receives a discharge.  The Court denies Plaintiff's motion

to dismiss the Chapter 7 case on a laches theory, and denies Plaintiff's motion to

disqualify Mr. Barr as counsel to Jeffrey Lee Tognetti.  The Court also denies Plaintiff's

summary judgment motion insofar as it seeks a determination in Plaintiff's favor on the

causes of action brought pursuant to 11 U.S.C. § 523(a), and the heretofore un-requested

relief sought pursuant to 11 U.S.C. § 727(a). The time in which to object to a debtor's

discharge is provided for in the Federal Rules of Bankruptcy Procedure, Rule 4004(a),

and the time limitations set forth therein are strictly construed, *see* discussion *infra*.  After

the Clerk of the Court transfers this adversary proceeding, the case is to be closed.  As for

future proceedings relating to Plaintiffs' adversary proceeding cause of action pursuant to

Section 523(a), Plaintiff and Debtor are instructed to return to this Court on July 11, 2006

at 11:30 a.m. for a pre-trial conference.

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28

U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge

Robert J. Ward dated July 10, 1984.  Proceedings to determine, avoid, or recover

fraudulent conveyances; determinations as to the dischargeability of particular debts; and

objections to discharge are "core proceedings" pursuant to 28 U.S.C. § 157(c)(2)(H),(I)

and (J), respectively.  Additionally, motions for permissive abstention brought pursuant

to Fed. R. Bankr. P. 5011(b) are themselves "core" proceedings.  *See In re Southmark Storage Assoc. Ltd. P'ship*, 132 B.R. 231 (Bankr. D. Conn. 1991).

## BACKGROUND FACTS

**Eric Ross and Race Capital Group's Relationship With Debtor Jeffrey Tognetti, His Family and The Various Corporate Entities[4]:**

Plaintiff Eric Ross's (the "Plaintiff") involvement with Jeffrey Tognetti, insofar as is relevant to the litigation, began in October, 2001, when Mr. Ross commenced employment as a securities trader with Syndicate Trading LLC, an entity of which Mr. Tognetti was either a shareholder or a director.  (Debtor's Statement of Financial Affairs, Question 18(A), lists Syndicate Trading, but does not specifically indicate what Debtor's interest in Syndicate Trading was).  In connection with this employment, Mr. Ross and

---

[4] The facts pertaining to the pre-litigation relationship between Plaintiffs and Defendants are gleaned largely from the Amended Verified Complaint dated February 10, 2003, provided to this Court as Exhibit B to Debtor's September 12, 2003 Notice of Removal. Plaintiff did not file a Local Rule 7056-1 Statement with his motion for summary judgment, and the document he denominates to be "Plaintiff (sic) Statement of Undisputed Facts", filed with his Reply Affidavit on April 25, 2006, *see* ECF Docket No. 107, 22 days after the submission of the summary judgment motion itself, does not cite to admissible evidence as required by the local rule.  *See* Local Rules for the Bankruptcy Court, Southern District of New York, Rule 7056-1, which provides in pertinent part:

 (b) Upon any motion for summary judgment pursuant to Bankruptcy Rule 7056, t*here shall be annexed to the motion* a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. *Failure to submit the statement shall constitute grounds for denial of the motion*.

(c) Papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short, and concise statement of additional material facts as to which it is contended that there is a genuine issue to be tried.

(d) Each numbered paragraph in the statement of material facts required to be served by the moving party shall be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.

(e) Each statement by the movant or opponent pursuant to subdivisions (b) or (c) of this rule, including each statement controverting any statement of material fact by a movant or opponent, shall be followed by citation to evidence which would be admissible.

Thus the Court extrapolated certain facts from the previously filed documents for background purposes only.

Race Capital Group LLC, (together with Mr. Ross, the "Plaintiffs") were required to

make an initial capital contribution of $200,000.  A capital account with Syndicate

Trading was established on behalf of Race Capital Group LLC in connection with its

admission as a class C member of Syndicate Trading, controlled by Debtor and his

affiliated entities.  *See* Plaintiff's Motion for an Order Granting Relief from the

Automatic Stay, ECF Docket No. 13, case number 03-37171 (the "Lift Stay Motion").

Plaintiffs apparently made an additional capital contribution of $50,000 sometime after

December, 2001.  On February 1, 2002, Ross was expelled as a member of Defendant

Syndicate Trading LLC.  On that date, there existed in Plaintiffs' capital account the sum

of $242,863.41.  Debtor tendered two checks to Plaintiffs, dated April 3, 2002, in the

sums of $121,431.00 and $121,432.41, respectively, in repayment of these capital

contributions.  Neither check cleared; one was returned for insufficient funds and the

other was stopped.    Plaintiffs do acknowledge however that they received $125,000

towards the liquidation of the capital account prior to the filing of the related bankruptcy

proceedings.  *See* Lift Stay Motion, ¶ 23.

## The State Court Litigation:

In an effort to recover the contributions to the capital account, on or about May 9,

2002 Plaintiffs commenced an action in Supreme Court of the State of New York,

County of Westchester, under Index Number 08162-2002, against Defendants Syndicate

Trading, LLC, Investment Services Capital Corp. d/b/a ICAP Investment and Trading,

LLC d/b/a ICAP and Jeffrey Tognetti (the "State Court Defendants").  In the Verified

7

Complaint filed in the action on June 18, 2002, Plaintiffs asserted eight causes of action,[5]

all of which concerned the business relationship between the parties.  On October 17,

2002, Justice Barone granted partial summary judgment in favor of Plaintiffs on the

eighth cause of action (the uncollected check count), and Plaintiffs were awarded a

money judgment in the sum of $127,246.41 (the amount of the check that was returned

for insufficient funds).  Thereafter, on or about June 24, 2002, Plaintiffs served

Defendants with a Supplemental Summons and Amended Verified Complaint.  In the

Amended Verified Complaint, Lino S. Tognetti (Jeffrey Tognetti's father) and Leigh A.

Tognetti (Jeffrey Tognetti's estranged wife) (collectively, the "Family Defendants") were

added as defendants, and several new causes of action were included that alleged the

fraudulent conveyance of assets in an effort to frustrate collection efforts.[6]  The addition

of the Family Defendants was specifically authorized by Justice Barone's Order entered

March 10, 2003, which indicated that a review of the circumstances underlying the

transfers and the operation of Debtor's business entities raised "very real questions of

fraud, manipulation and contrivance."  Specifically, Justice Barone considered the

following accusations to be sufficiently at issue to allow the filing of an amended

complaint naming the Family Defendants:[7]

---

[5] The eight causes of action seek recovery for: breach of contract, breach of fiduciary duty, fraud in the inducement, promissory estoppel, negligent misrepresentation, an accounting, conversion and failure of collection on checks.

[6] The fraudulent conveyance claim allegations are that Syndicate Trading assigned and transferred its assets to Lino Tognetti, including the real property located at 94 Westside Avenue, Haverstraw, New York, and 117 Route 9W, Haverstraw, New York, and that Jeffrey Tognetti assigned and transferred to Leigh A. Tognetti real property located at 14 Blue Note Lane, Stony Point, New York.  These transfers were alleged to have been accomplished with the intent to hinder, delay and defraud creditors, for little or no consideration.  The Amended Verified Complaint also alleges that Syndicate Trading, Jeffrey Tognetti and the ICAP Defendants transferred certain property including cash, accounts, computers, proprietary computer programs, real property, furniture, fixtures and equipment to unknown or unnamed parties, denominated Defendants Does 1-10.

[7] The following list is provided to exemplify the concerns of the State Supreme Court Justice, and should not be construed as findings of fact by this Court.

- Debtor transferred properties to his wife for less than fair consideration subsequent to the Supreme Court's order granting Plaintiffs a judgment;

- Debtor charged his personal expenses to Syndicate and made cash transfers from the Syndicate corporate account to friends and family;

- Syndicate Trading was treated as Debtor Jeffrey Tognetti's alter ego;

- No accounting as to Syndicate Trading's assets had been made although the corporation was not operating;

- Debtor deeded his residence at 14 Blue Note Lane, Stony Point, New York, to his (then) wife Leigh Ann Demelo Tognetti for no consideration. (At the time of the signing of the March 10, 2003 order, the property was listed for sale, with Leigh Demelo Tognetti as listing agent). The property allegedly had $900,000 in equity at that time;

- On November 6, 2002 Debtor claimed two parcels of real estate located in Haverstraw, New York (the "Haverstraw properties") to his father, Lino Tognetti for $10.00 per parcel. These parcels were also listed on the market with Ms. Leigh Ann DeMelo Tognetti as listing agent; and

- Although the Blue Note Property was purchased by Ms. DeMelo Tognetti in 1999, Debtor as a partner of Jeffal Family Limited Partnership had title to the property one month after the property was purchased, apparently because Ms. Tognetti transferred the property to the partnership soon after it was acquired.

Justice Barone was sufficiently concerned about the inter-family transfers to allow Plaintiffs to join the Family Defendants to the State Court Action. Thus, although Plaintiff had been granted Summary Judgment on the dishonored check cause of action by this time, several causes of action remained viable, including the fraudulent conveyance claims, when the parties entered into the Settlement Stipulation discussed at length below.

**The Settlement Stipulation**:

On May 1, 2003, less than two months after Justice Barone's March 10, 2003 Order, Plaintiffs Eric Ross and Race Capital Group, LLC entered into a stipulation of settlement with Defendants Jeffrey Tognetti, Lino Tognetti, and Leigh Ann DeMelo, which stipulation was "so ordered" by Supreme Court Justice Louis A. Barone on May 19, 2003 (the "Settlement Stipulation"). The parties specifically indicate in the Settlement Stipulation that they were "desirous of settling the remainder of the action and Defendants [were] desirous of satisfying the …the judgment…" (*see* the fourth decretal paragraph of the Settlement Stipulation). The "remainder of the action" included the fraudulent conveyance claims. Therefore, the Settlement Stipulation resolved both the judgment amount and the remaining issues among Plaintiffs and Leno Tognetti, Jeffrey Tognetti and Leigh Ann Demelo. The Settlement Stipulation also states that the State Court action was settled for the sum of $205,000.00 (the "Settlement Amount"), which sum encompasses the $127,246.41 judgment amount plus an additional settlement amount of $77,753.59, ¶ 2. The Settlement Amount was to be paid from the proceeds of the sale of the Haverstraw properties, ¶ 2(a), (b). Defendants specifically waived all defenses to the State Court Action, ¶ 1. The Settlement Stipulation also states that Plaintiffs' acceptance of partial payment of the Settlement Amount does not constitute a waiver of Plaintiffs' rights, to payment or otherwise, under the Settlement Stipulation, ¶ 10. Jurisdiction over enforcement of the provisions of the Settlement Stipulation was expressly reserved to the New York State Supreme Court, ¶ 15. Finally, there is no dispute that, at the time of the Tognetti bankruptcy filing, the provisions of the Settlement Stipulation had not been satisfied by the Defendants.

**The LST Realty Corp.'s Bankruptcy Proceeding (Chapter 11 case number 03-37736)**:

LST Realty Corp.  ("LST") filed a case under Chapter 11 on November 11, 2003, case number 03-37736.   LST was engaged in the business of holding and operating the Haverstraw properties.  These properties were transfered to LST by virtue of an assignment from Lino Tognetti, LST's sole shareholder, officer and director.  Lino Tognetti himself acquired title to the two properties from Syndicate Trading, the defunct entity listed on Jeffrey Tognetti's Statement of Financial Affairs (#18A) as one of many entities in which Jeffrey Tognetti held an ownership and/or directorship interest.  (The transfer from Syndicate to Lino allegedly occurred after Jeffrey Tognetti's bankruptcy filing).  Syndicate Trading is also the entity that employed Eric Ross.  After filing for bankruptcy protection, LST attempted to sell the Haverstraw properties.  According to LST's *Application for Order Pursuant to Sections 327, 363(b), (f) and 365 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 Authorizing and Approving Sales of Real Property and Improvements Thereon Subject to Higher and Better Offers*, (ECF Docket No. 8) (hereafter, the "Sale Motion"), Syndicate Trading was paid approximately "$200,000 in loans made and/or other consideration" for the Haverstraw properties by Lino Tognetti. (LST did not offer an explanation as to the discrepancy between this sum, and the $10.00 per parcel allegedly paid by Lino Tognetti for the Haverstraw properties in the proceeding before Justice Barone, *see supra*).  After the assignment from Lino, LST entered into contracts of sale for the two properties.  The Haverstraw properties could not be sold at that time because of the many disputed claims to the proceeds and a lis pendens filed by Plaintiff Eric Ross; therefore LST filed this Chapter 11 petition in an apparent attempt to effectuate the sales to two individuals, Ryan Lewandowski and John

11

Callanan (the "Buyers").    After some wrangling among the various claimants, this Court

approved the proposed sales of the two Haverstraw properties on February 10, 2004 to

the Buyers.    According to an application by LST's counsel's asserting a claim for legal

fees against estate proceeds (ECF Docket No. 43), approximately $160,000 was to be

held in escrow after satisfaction of the first mortgages and payment of closing costs

associated with the sale of the Haverstraw properties.  Pursuant to 11 U.S.C. § 363(f), the

sales were free and clear of all liens, claims and encumbrances, and any remaining claims

would attach to the sale proceeds.  LST represented in the Sale Motion that other than the

mortgages and liens set forth in the papers, i.e. the first mortgages, the Ross "judgment"

(i.e. the Settlement Stipulation) and the lien filed by the Town of Haverstraw taxing

authority, there were no other "legitimate" liens or encumbrances upon Debtor's interest

in the properties.  Subsequent to that time, however, several parties came forward

claiming an entitlement to payment from the proceeds of the sales of the Haverstraw

properties.  The *Notice of Hearing to Consider Distribution of Estate Sale Proceeds*, ECF

Docket No. 40, lists the following creditors as having asserted claims against the net

proceeds of the sale in the following amounts:

Rattet, Pasternak & Oliver LLP, claim for attorneys' fees under the Bankruptcy

Code pursuant to Section 506(c), $11,000;

Joan Profetta, Gary Goldberg and VIP 100, LP, Mortgage on 118 Route 9W

Haverstraw, New York, $100,000 (listed as disputed);

Eric Ross, Judgment, $150,000 (reduced as per a proposed stipulation between

LST and Plaintiffs that was never approved by this Court);

De Lage Laden, Judgment, $141,000;

M&T Credit Corporation, Judgment, $262,070.85.

The parties eventually agreed to the following treatment with regard to the distribution of the sales proceeds:

VIP Entities - $50,000;

Eric Ross and Race Capital Group - $40,000;

M&T Credit Corporation - $30,000;

De Lage Laden Financial Services, Inc. - $30,000;

Rattet, Pasternak, et al - $5,232.75.

After payment was made in accordance with this agreed-upon treatment, the LST bankruptcy case was closed upon the U.S. Trustee's Motion to Dismiss on June 24, 2004.

**The Jeffrey Lee Tognetti Bankruptcy Filing, Chapter 11 Case No. 03-37171 and Plaintiffs' Involvement Therein:**

Debtor filed his Chapter 11 case on September 10, 2003. Debtor sets forth in his Rule 1007-2 Affidavit that he was a securities trader on "hiatus" from the securities industry living with his parents in Tuxedo, New York. Plaintiff has alleged that Debtor is actually prohibited from engaging in employment as a securities trader because he has been convicted of a felony. Debtor does not deny his single felony conviction, as reflected on the record at the November 23, 2003 hearing on Lift Stay Motion. At the time of the bankruptcy filing, Debtor claimed to be employed as an Internet car salesman. His express intention in filing for bankruptcy protection was to remove some of the state court actions commenced against him to district court and then to the bankruptcy court, yet only one case, *Eric Ross and Race Capital Group, LLC v. Syndicate Trading, LLC, Investment Services Capital Corp. d/b/a ICAP Investment and Trading, LLC d/b/a ICAP and Jeffrey Tognetti, Leno S. Tognetti, Leigh A. Tognetti a/k/a Leigh Ann Demelo* (the

"State Court Action" or the "Removed Action"), AP No. 04-9400, was removed to this

Court at the Debtor's instance.  Debtor listed a total monthly income of $3,433 at the time

of filing, claiming monthly expenses of $3,725, which included a $3,000 alimony/support

payment.  Total liabilities in the case were estimated by the Debtor to equal

$3,710,000.00, including scheduled secured claims totaling $500,000 and unsecured

claims of $3,210,000.

Debtor's Chapter 11 case was converted to a case under Chapter 7 on November

25, 2003 (the "Conversion Hearing").  Debtor consented to the conversion which was

made upon the U.S. Trustee's request. Michael O'Leary was appointed the Chapter 7

trustee, and it was discussed at the Conversion Hearing that he would pursue any

potential fraudulent conveyance actions against Debtor's family members. As will be

discussed at more length *infra*, the Chapter 7 trustee ultimately determined that the

marital premises located in Stony Point, New York were not fraudulently conveyed, and

he declined to pursue a fraudulent conveyance action.

Although Plaintiffs were initially very active in the Debtor's bankruptcy case,

filing a Motion for Relief from the Automatic Stay in November, 2003, but after the case

was converted to a Chapter 7 case on November 25, 2003, a long period of delay ensued,

in which time several extensions of time to file a complaint objecting to discharge and

dischargeability were sought.  Debtor initially filed opposition to the requested

extensions, and the Plaintiffs' first extension motion was denied, with the Court thereafter

permitting Plaintiffs only until March 15, 2004 to file a dischargeability complaint;

however, this time period was ultimately extended by stipulation entered into between the

parties.  *See* ECF Docket No. 55, in case number 03-37171.  This deadline was further

14

extended by stipulation until the Court ordered that November 19, 2004 was the final

deadline to file dischargeability complaints.  Meanwhile, the removed action, which was

transferred to this Court on January 30, 2004, languished while the Court waited for the

pleadings to be transmitted from the District Court.   Ultimately, then-counsel for

Plaintiffs, Martin Ochs, Esq., provided the Court with the necessary documents

pertaining to the Removed Action, so that the matter could continue.  Thereafter, the

pretrial conference was adjourned multiple times; Plaintiffs engaged Lewis Wrobel, Esq.

to represent them in the removed proceeding and to also file a complaint objecting to the

dischargeability of Plaintiff's claim, which was filed on November 19, 2004 (the last date

to file such claims), adversary proceeding number 04-9165.  Very little has occurred in

that Section 523(a) adversary proceeding; a scheduling order has been filed on the

Court's docket on January 10, 2006 and includes a final pre-trial conference date of June

20, 2006.  Discovery was to be completed by March 31, 2006.  The Court has not so-

ordered the proposed scheduling order but the parties have indicated their agreement to

the schedule set forth therein by signing the order.   The Court does not believe however

that this agreed upon schedule has been adhered to.

        As stated, prior to a settlement being reached with LST Realty and Lino Tognetti,

Plaintiff's Martin Ochs, Esq. counsel was aggressively pursuing payment on Ross' claim.

Once settlement with LST was achieved, however, the case conference in this adversary

proceeding was adjourned multiple times, from May 11, 2004 until June 3, 2004, from

June 3, 2004 to July 7, 2004, from July 7, 2004 until August 31, 2004, and from August

31, 2004, until September 21, 2004, while the Court waited for transmission of the

pleadings and other necessary documents.  During this time, the Plaintiff Martin Ochs,

Esq. counsel represented to the Court on the record that he would be filing a summary

judgment motion; instead, a stipulation substituting counsel was filed on August 27,

2004, *see* ECF Docket No. 17.   On November 16, 2004, this Court entered an order

authorizing Martin Ochs, Esq, Plaintiffs' counsel at that time, to withdraw from his

representation of Plaintiffs.  A month later, on December 10, 2004, Debtor filed an

*Opposition to Untimely Filed Pre-Motion Conference Letter Filed by Plaintiff*, ECF

Docket No. 19, case number 04-9400.  This opposition apparently addresses a document

filed in the main Tognetti bankruptcy case, but applicable to the instant adversary

proceeding.  This incorrectly filed document was in fact the long awaited summary

judgment motion, found at ECF Docket No. 96, (the "First Summary Judgment Motion"),

in case number 03-37171, and filed on December 7, 2004 for consideration by the Court

at the scheduled December 14, 2004 case conference.  The adverse parties and the Court

were therefore given only a week to review the voluminous submission and, in the case

of the adverse parties, to respond.  Not only was the First Summary Judgment Motion not

filed on the appropriate case docket, it was also not preceded by the requisite pre-

dispositive motion conference request, *see* Local Rules for the Southern District of New

York Bankruptcy Court, Rule 7056-1(a):

> [U]nless the Court orders otherwise, no party shall file a motion for
> summary judgment without first seeking a pre-motion conference. The
> request for a pre-motion conference shall be made by letter, filed on the
> CM/ECF system, setting forth the issues to be presented in the motion and
> the grounds for relief.

16

Steven Landy, who filed the First Summary Judgment Motion,[8] thereafter filed a

letter requesting a pre-motion conference (ECF Docket No. 98) once more filed

erroneously in the main case.

The purpose of Local Rule 7056-1(a) is to avoid the bringing of unnecessary

summary judgment motions.

> Subdivision (a) of this rule was added in 2004 because motions for
> summary judgment are frequently burdensome, in time and expense, for
> the Court and the parties. Parties frequently file motions for summary
> judgment when an objective examination would reveal triable issues of
> fact or when the Court might conclude that it would be more cost-effective
> to resolve all issues at trial, given that most trials in bankruptcy court are
> bench trials. Subdivision (a) provides the Court with opportunity to notify
> the parties of its observations at a pre-motion conference. The rule does
> not limit a party's right to file a motion for summary judgment after the
> pre-motion conference.

*See* Comment to Rule 7056-1, Local Bankruptcy Rules for the Southern District
of New York (emphasis supplied).

At the December 14, 2004 conference, the Court informed Plaintiff's

counsel that it appeared that issues of fact existed with regard to the First

Summary Judgment Motion.  Nevertheless, Plaintiff was still permitted to correct

the filing deficiencies and proceed with the summary judgment motion, after the

December 14, 2004 conference.[9]  To this Court's knowledge, the defects in the

First Summary Judgment Motion have never been corrected – that is, the First

Summary Judgment Motion was never filed in the correct adversary proceeding.[10]

Plaintiff never prosecuted the First Summary Judgment Motion to its conclusion.

---

[8]  Mr. Landy has represented, and continues to represent, the Plaintiffs in the state court proceedings, as
well as the various matters before this Court, and persists in representing Race Capital Group in this matter
while Mr. Ross proceeds *pro se*.

[9] In accordance with the local rule, the Court could not have prevented Plaintiff from pursuing the First
Summary Judgment Motion.

[10] In fact, this is another failing common to these cases – very often the documents pertaining to one of the
adversary proceedings are filed in the incorrect adversary proceeding, see e.g. Defendant's Motion To

Also at the December 14, 2004 hearing, the Chapter 7 Trustee appeared

and stated that he did not think that the conveyance of the Stony Point property to

Ms. DeMelo was a fraudulent conveyance.  *See* Transcript of December 14, 2004

hearing, p. 14, l. 7-14.  (Prior to the subsequent March 15, 2005 pre-trial

conference, on March 14, 2005, the Chapter 7 Trustee filed a letter in the main

bankruptcy case, ECF Docket No. 105, stating that he did not intend to pursue a

fraudulent conveyance action, but had no objection to Plaintiffs so doing as long

as the proceeds inured to the benefit of all creditors and the costs of litigation

were not charged to the estate).  At that time, the Court inquired of the Plaintiff's

counsel whether he sought to litigate his underlying claims or pursue enforcement

of the Settlement Stipulation.  *See* Transcript of December 14, 2004 hearing, p.

11-13. Plaintiff's counsel indicated that he was "prepared" to pursue his client's

interests by whatever means necessary, which didn't satisfactorily answer the

Court's question.  The Court's question was not academic – the Court needed a

direct, final answer to the question of whether Plaintiff wished to pursue

enforcement of the Settlement Stipulation or litigate the underlying claims to

proceed with the Removed Proceeding.

The Court did not get the final answer as to Plaintiff's intentions at the

December 14, 2004 hearing, and assuming that Plaintiff wished to litigate the

---

Withdraw Reference (the "Reference Motion"), filed in adversary proceeding number 04-9165, ECF
Docket No. 9, on May 31, 2005; a motion which in fact pertained to adversary proceeding number 04-9400.
The Reference Motion was not filed in the correct adversary proceeding until August 16, 2005, more than
two months after the incorrect filing.  During this period, Plaintiffs' then counsel appeared in Court on June
21, 2006, admitting that he had "egg on his face" for failing to file the motion in the appropriate adversary
proceeding, and promising to correct the defect; this promise was repeated at no less than two further case
conferences, held on July 19, 2005 and August 9, 2005.  The mistakes made in the Reference Motion and
the First Summary Judgment Motion are indicative of the types of repeated errors made in these cases that
have caused these matters to stretch out interminably before this Court, and have made the drafting of this
memorandum decision exceedingly difficult.

underlying claim, the Court stated that there were serious issues as to whether

these Plaintiffs had standing to pursue the fraudulent conveyance action, as in a

bankruptcy case recovery on a fraudulent conveyance action inures to the benefit

of all creditors, and thus, is properly brought by the Chapter 7 Trustee.  *See In re*

*Fox*, 305 B.R. 912, 914 (10th Cir. BAP 2004) (Bohanon, J.).

      The foregoing caused this Court to instruct the parties to submit briefs on the

issue of standing.  Further briefing was accomplished, and the Court subsequently ruled

that, because the Chapter 7 Trustee did not think that a fraudulent conveyance action was

warranted, the Plaintiffs were required to make a showing that the Chapter 7 Trustee

unjustifiably failed to bring the suit or abused his discretion in not suing to avoid a

transfer.  *See Commodore Int'l Ltd. v. Gould*, 262 F.3d 96, 100 (2d Cir. 2001).  In order

to determine whether the Trustee's failure to bring the suit was unjustified, the Court was

required to consider whether the fraudulent conveyance claim was "colorable", i.e.

meritorious.   *See In re STN Enterprises*, 779 F.2d 901, 905 (2d Cir. 1985).  In addition to

showing that the claim is meritorious, the creditor seeking to bring the fraudulent

conveyance action must also prove that the action would benefit the estate, by affirmation

or other evidence.  *See id.* at 905.  That is, if the recovery of the property would only

benefit Plaintiff, then the Court could not permit the fraudulent conveyance action to be

pursued in this Court, even if the Trustee was unjustified in not seeking to pursue the

action and even if the claim was colorable, because there would be no benefit to the

estate.  Plaintiffs failed to make the required showing at the subsequent hearing, and the

Court dismissed the adversary proceeding at the request of Ms. Demelo at an adjourned

hearing held on August 23, 2005.

On November 3, 2005, Plaintiffs filed a motion for reargument pursuant to

Federal Rule of Civil Procedure 59, applicable here through Fed. R. Bankr. R. 9024 (ECF

Docket No. 50; the "Reargument Motion") in adversary proceeding number 04-9400.

Debtor and Ms. DeMelo opposed the Reargument Motion.  The Court heard the

Reargument Motion on February 14, 2006, and vacated its order dismissing the adversary

proceeding, pursuant to Fed. R. Bankr. P. 9024.  The Court determined that it was

required to give Plaintiffs notice of its intent to take the testimony of witnesses, pursuant

to Fed. R. Bankr. P. 9014(e); the Court decided it did not give the Plaintiffs adequate

notice at the December 14, 2004 hearing because under the circumstances in this case, the

hearing on standing would require testimony and the presentation of evidence.  The Court

therefore vacated its order for mistake of law.  *See In re 310 Assoc.*, 346 F.3d 31, 34 (2d

Cir. 2003).  So as of February 14, 2006, the First Summary Judgment had not been ruled

upon; and the Court indicated it was prepared to allow the Plaintiffs the opportunity to

bring on an evidentiary hearing as to whether a colorable fraudulent conveyance claim

exists as to the Stony Point property.

At the hearing on the Reargument Motion, held on February 14, 2006, Plaintiff

Eric Ross dismissed his attorney and then proceed to appear *pro se*.[11]  Ross then

requested this Court's permission to file another summary judgment motion (the "Second

Summary Judgment Motion"), which request the Court granted.  Mr. Ross *had* complied

with Local Bankruptcy Rule 7056-1 prior to the February 14, 2006 conference, by filing a

request for a pre-motion conference via letter filed on February 3, 2006, *see* ECF Docket

No. 82.  Contrary to what opposing counsel has contended, this Court *did not rule* on the

---

[11] It is clear that although all documents continue to be filed by Steven Landy's office on the Court's
electronic filing system, Mr. Ross prepared the pleadings that make up the instant summary judgment
motion, and is prosecuting the matter *pro se* at this point.

merits of the First Summary Judgment Motion; rather, the Court merely ruled that it *appeared at that time* that an issue of fact existed that mitigated against filing a summary judgment motion.  As the local rule indicates, the Court could not have prevented Plaintiffs from re-filing the First Summary Judgment Motion after the December 14, 2004 conference; the motion was never considered because it was not filed on the correct docket, and not prosecuted to conclusion by Plaintiff.  The record will reflect that this Court has continuously questioned Plaintiff's various counsel as to whether Plaintiff wished to pursue Plaintiff's rights under the Settlement Stipulation, or to litigate the underlying merits of the action, but was met with a variety of responses, the gist of which appeared to be that Plaintiffs wanted to do both, an untenable option.[12]   The Court has always been of the opinion that if Plaintiffs desired to litigate their claims against Debtor and the Family Defendants, an issue of fact clearly existed and an evidentiary hearing was necessary, and it has never been certain whether Plaintiffs have standing to prosecute a fraudulent conveyance action in bankruptcy court.  A fraudulent conveyance action is a matter appropriately before this Court.   If Plaintiffs wished to enforce the Settlement Stipulation so-ordered by the state court, however, that is a different circumstance altogether, implicating a different analysis.

---

[12] In fact, at the Reargument hearing held on February 14, 2006, when the Court granted Mr. Ross' request to file a second summary judgment motion, Plaintiff would not commit to waiving his right to an evidentiary hearing on the fraudulent conveyance action, *see* Transcript of February 14, 2006 hearing, p. 21, l. 4-25.  Plaintiff at that late date still did not realize, apparently, that enforcement of his rights was an either/or proposition – either he sought to litigate his underlying cause of action, or he sought to enforce the settlement stipulation.  Plaintiff could not pursue both options, *see Abou-Khadra v. Mahshie*, 4 F.3d 1071,1079-10 (2d Cir. 1993) (N.Y. Gen. Oblig. Law § 15-501(3) requires a litigant to elect his remedy – either compensation as provided for any breach of the accord, or damages on the claims that underlie the accord).

## DISCUSSION

Plaintiffs' Second Summary Judgment Motion does not merely seek "summary judgment."  Combined in the Second Summary Judgment Motion are: a motion for permissive abstention; a motion to dismiss Debtor's Chapter 7 case; a motion to disqualify Debtor's bankruptcy counsel, Harvey Barr; and a motion for summary judgment on the pleadings in the dischargeability proceeding.   The Court will treat each motion in turn.

## Permissive Abstention with Regard to the State Court Stipulation:

Under New York General Obligations Law § 15-501, Plaintiffs may elect to vindicate their rights under the Settlement Stipulation, or to litigate the underlying causes of action against the defendants.

Gen. Oblig. Law § 15-501 states in relevant part:

Executory accord:

1. Executory accord as used in this section means an agreement embodying a promise express or implied to accept at some future time a stipulated performance in satisfaction or discharge in whole or in part of any present claim, cause of action, contract, obligation, or lease, or any mortgage or other security interest in personal or real property, and a promise express or implied to render such performance in satisfaction or in discharge of such claim, cause of action, contract, obligation, lease, mortgage or security interest…

                                        ***

3. If an executory accord is not performed according to its terms by one party, the other party shall be entitled either to assert his rights under the claim, cause of action, contract, obligation, lease, mortgage or other security interest which is the subject of the accord, or to assert his right under the accord…

Plaintiffs have requested in the Second Summary Judgment Motion to return to state court to allow Justice Barone to enforce the Settlement Stipulation.  This is a

permissible course of action pursuant to New York Gen. Oblig. Law § 15-501 – Plaintiffs

are electing to enforce their rights under the Settlement Stipulation, which falls within the

definition of an accord under N.Y. Gen. Oblig. Law § 15-501.  The fraudulent

conveyance claims against the Debtor and the Family Defendants were settled by the

parties while the matter was still pending before the state court.  The state court

specifically reserved jurisdiction over the Settlement Stipulation, and the parties

expressly agreed to restore the matters to the state court calendar if the terms and

conditions of the Settlement Stipulation were not met.  The terms of settlement

encompassed not only the State Court Judgment but an additional sum for the allegations

by state court did not have the opportunity to reach – fraudulent conveyance being among

those claims.

Under the circumstances, it is appropriate for the Court to exercise its discretion

and permissively abstain from deciding the issues related to the Settlement Stipulation

raised by the parties, as requested by Plaintiffs, and remand the matter to the New York

State Supreme Court that approved the Settlement Stipulation.  *See* 28 U.S.C.

§ 1334(c)(1), which provides that "except with respect to a case under chapter 15 of title

11, nothing in this section prevents a district court in the interest of justice, or in the

interest of comity with State courts or respect for State law, from abstaining from hearing

a particular proceeding arising under title 11 or arising in or related to a case under title

11."  In circumstances such as these, where the Chapter 7 Trustee has determined that a

fraudulent conveyance action against the Debtor does not exist, and has declined to file

such action, and the jurisdiction over the Settlement Stipulation that resolves the

Plaintiffs' cause of action for fraudulent conveyance against the Defendants was

23

specifically reserved to the New York State Supreme Court, there is no reason for this

Court to continue to exercise jurisdiction over Plaintiffs' enforcement of his rights,

except insofar as Plaintiff seeks collection from Debtor.  After nearly three years of

wrangling with these parties, and giving deference to the Chapter 7 Trustee's business

judgment that no viable fraudulent claim exists, the Court thinks that Plaintiff should be

totally free to pursue rights against the Defendants to that action, and it is apparent that

no estate property is going to be affected by the Court's decision to permissively abstain

from hearing the issues arising out of the breach of the Settlement Stipulation.

The State Court is the appropriate forum to determine the validity and scope of

the Settlement Stipulation.  Some factors that the Court considered in determining

whether to permissively abstain are:

> 1) the effect of abstention on the efficient administration of the bankruptcy estate;
> 2) the extent to which state law issues predominate;
> 3) the difficulty or unsettled nature of the applicable law;
> 4) the presence of a related proceeding commenced in state court or other non-bankruptcy courts;
> 5) the basis of bankruptcy jurisdiction, if any, other than 28 U.S.C. § 1334;
> 6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
> 7) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
> 8) the burden on the bankruptcy court's docket;
> 9) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
> 10) the existence of a right to a jury trial; and
> 11) the presence in the proceeding of non-debtor parties.

*See 1-Iron Commercial Premium  v. The Taylor Agency*, 281 B.R. 94 (Bankr. S.D.Ala.
2001); *see also Kassover v. Prism Venture Partners, LLC*, 336 B.R. 74, 79 (Bankr.
S.D.N.Y. 2006) (Lifland, J.).

The Court's abstention will have no effect on the administration of the bankruptcy

estate, as the Debtor's discharge in this no-asset Chapter 7 is imminent, *see* factor number

24

1.  It is entirely feasible to sever the state law claim, i.e. litigation involving the

Settlement Stipulation, and allow the parties to return here for enforcement *as to Debtor*

*only* by means of the separate dischargeability action – which has already been filed, *see*

factor 7.  The removal of this adversary proceeding from the State Court has been an

ongoing mess, with multiple misfilings, adjournments, motions to remove reference and

to remand, creating a tremendous burden on this Court's docket, implicating factor

number 8.  It has been alleged, and this Court agrees, that the removal of the instant

matter to this Court was merely forum shopping by the Debtor and an attempt (which has

been successful) to delay the Plaintiffs' ability to enforce the Settlement Stipulation in

state court, *see* factor number 9.  Finally there is at least one, and possibly two, non-

debtor Family defendants who were parties to the Settlement Stipulation and against

whom enforcement may be sought, *see* Factor 11.  The Court therefore finds that

permissive abstention is appropriate in these circumstances.

The Court also lifts the automatic stay as requested to permit Plaintiff to proceed with

enforcement of the Settlement Stipulation in state court.  In so doing, the Court has

conducted an examination of the Sonnax factors, and finds that the circumstances require

such a result.  *See In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2d Cir. 1990).  The Second

Circuit's articulated factors for determining whether "cause" exists to grant relief from

the automatic stay are as follows:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

*Sonnax* factor 1 is implicated as relief will allow the state court to resolve any remaining issues with regard to the validity of the Settlement Stipulation. Enforcement of the Settlement Stipulation will likely involve at least one third party, Leigh Ann DeMelo, a non-debtor transferee, *see* Factor 6. State court enforcement will have no impact on this bankruptcy case because any judgment arising from enforcement the Settlement Stipulation will likely be imposed upon property that Debtor and Ms. DeMelo both vehemently argue is not property of the bankruptcy estate, *see* Factor 2 (for, if it were estate property, the Stony Point premises would be properly liquidated by the Trustee and used to repay Debtor's creditors). Finally, Factor 4 is implicated – the state court that so-ordered the Settlement Stipulation is best able to interpret its disputed provisions.

To summarize, the Court finds that the Trustee has abandoned the fraudulent conveyance action; the parties had settled their fraudulent conveyance issues months before the Tognetti bankruptcy came before this Court; the case is a no asset case and the only remaining issue for this Court with regard to the Settlement Stipulation is whether Debtor's obligation to Mr. Ross is dischargeable, already the subject of a separate,

26

pending adversary proceeding, as will be discussed further, *infra.*   As the Court has determined to abstain from hearing the issues surrounding the Settlement Stipulation, it need not decide: (1) whether Plaintiffs have standing to pursue the fraudulent conveyance claim (a determination that would require evidence as to the colorability of the fraudulent conveyance claim and is therefore inappropriate for decision on summary judgment); and (2) whether Defendants have waived their rights to assert any defenses to the matters resolved by virtue of the Settlement Stipulation (presumably the State Court will make this determination in adjudicating the Settlement Stipulation controversy).  Having elected this remedy, Plaintiff's fraudulent conveyance option is precluded, removing all connection to bankruptcy other than whatever the state court finds the Debtor is liable to pay, and any future finding of non-dischargeability.

This leaves for the Court's determination the Plaintiffs' requests to dismiss Debtor's Chapter 7 bankruptcy case pursuant to 11 U.S.C. § 707(a) & (b), to deny Debtor's discharge pursuant to Fed. R. Bankr. P. 4004 and Section 727(a), to deny the dischargeability of Debtor's obligation to Plaintiffs pursuant to Fed. R. Bankr. P. 4007 and Section 523(a), and disqualify Debtor's counsel Harvey Barr, Esq., from representing Debtor in this adversary proceeding.

**<u>The Request for Dismissal</u>**

Plaintiffs have also sought in the instant Summary Judgment Motion dismissal of Jeffrey Lee Tognetti's Chapter 7 case, citing to various sections of § 707 and also, surprisingly, and presumably mistakenly, to 11 U.S.C. § 1129, which section applies to confirmation of a Chapter 11 plan.  Debtor's bankruptcy case *did* begin life as a Chapter 11 filing, but Debtor voluntarily converted the case to one under Chapter 7 on November

27

25, 2003, during the course of a hearing on Plaintiffs' original Motion for Relief from the
Automatic Stay. Plaintiff Eric Ross and his then counsel, Martin Ochs, Esq. were present
at that hearing and offered no objection to the conversion.

According to Plaintiff's Second Summary Judgment Motion, the case was
originally filed as a Chapter 11 in order to permit Debtor to remove the State Court
Action to bankruptcy court, and then strategically converted to Chapter 7 so that Debtor's
future earnings would not become property of the bankruptcy estate. Plaintiffs also
allege that Debtor owned an entity at the time of filing, known as either Managed Auto or
Sell-it-Speedy, but falsely named his brother, Matthew Tognetti, as the owner of the
business. Matthew Tognetti had allegedly filed his own bankruptcy case in 2005 in
White Plains, New York, and did not list ownership of any companies on his petition.
This alleged omission from Debtor Jeffrey Tognetti's schedule, when taken together with
Debtor's alleged ineligibility to be a Chapter 11 debtor, and certain various specified
instances of alleged fraud, perjury, misrepresentations and deceit, should, Plaintiff
argues, constitute grounds to dismiss Debtor's Chapter 7 case.

Apparently, Plaintiff is arguing at this late date that conversion to Chapter 11 was
not appropriate because Debtor Jeffrey Lee Tognetti was not eligible to be a debtor in
possession, *see* 11 U.S.C. § 1112(a)(1) ("The debtor may convert a case under this
chapter to a case under chapter 7 of this title unless – (1) the debtor is not a debtor in
possession..."), and thus, the Court should dismiss the instant Chapter 7 case for "cause,"
pursuant to 11 U.S.C. § 707(a). [13] Plaintiff also opines that the case was converted to a
Chapter 7 case to protect Debtor's future earnings; however, the record does not bear out

---

[13] At one point in the motion papers, Plaintiffs seek to dismiss Debtor's Chapter 7 case pursuant to §
707(b); however, it is clear that only the Court or the United States Trustee have standing to seek to dismiss
for substantial abuse pursuant to 11 U.S.C. § 707(b).

this theory, and in any event, there's nothing inappropriate about that, or even raise the specter or a presumption of bad faith.  The Court has reviewed the record of that hearing and very forceful arguments in favor of appointment of a Chapter 11 Trustee were made by Mark S. Swartz, who appeared on behalf of creditors Gary Goldberg and Joan Profetta.  The rationale for those arguments rested almost entirely on the allegedly fraudulent transfers among the Tognetti family members and the various corporate entities, and it was argued that the appointment of a trustee was necessary as Debtor, as debtor-in-possession, would have no motivation to scrutinize the appropriateness of the transfers or to pursue the return of the property from his family members, if necessary. The Court indicated that it found this argument very persuasive, and Debtor thereafter consented to the conversion to Chapter 7.   The Chapter 7 Trustee has since stated that he does not believe a viable fraudulent conveyance action exists, and issues regarding the transfer of two of the three properties originally complained of have been resolved, leaving only the transfer of the Stony Point property in dispute.  There is perhaps an argument that could be made that Debtor strategically filed a Chapter 11, removed the State Court Action, all the while aware that the matter would be converted to Chapter 7 at the request of interested parties due to the circumstances, but this state of affairs has been in existence since January, 2004 at the latest, and Plaintiff has waited over two years to use this argument as a basis for a motion to dismiss.

The movant has the burden of showing cause for dismissal.  *See In re Cohara*, 324 B.R. 24, 27 (6th Cir. BAP 2005).  Some factors to be considered in determining, under the totality of the circumstances, whether a filing was in bad faith such that "cause"

exists to dismiss the case, were elucidated in the recent case of *In re O'Brien*, 328 B.R.

669, 675 (Bankr. W.D.N.Y. 2005):

1.  The debtor reduces creditors to a single creditor in the months prior to the filing of the petition;
2.  The debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle;
3.  Debtor filed the case in response to a Judgment pending litigation...;
4.  The debtor made no efforts to repay his debts;
5.  The unfairness of the use of Chapter 7;
6.  The debtor has sufficient resources to pay his debts;
7.  The debtor is paying debts to insiders;
8.  The schedules inflate expenses to disguise financial well-being;
9.  The debtor transferred assets;
10. The debtor's overly utilizing the protections of the Code to the unconscionable detriment of creditors;
11. The debtor employed a deliberate and persistent plan of evading a single major creditor;
12. The debtor failed to make candid and full disclosure;
13. The debts are modest in relation to assets and income; and
14. There are multiple bankruptcies or other procedural 'gymnastics.'

In this case, Plaintiff has argued that the following factors are implicated:

Factor # 3 – debtor filed the instant case in response to a judgment or pending litigation - this case, and the LST bankruptcy, were allegedly filed to permit the sale of the Haverstraw Properties and to deal with the various state court proceedings pending against Jeffrey Lee Tognetti, including the enforcement of the Settlement Stipulation;

Factor # 9 – debtor transferred assets – there is no dispute that assets were transferred, although the question remains whether the transfers were in fraud of creditors;

Factor # 11 – debtor employed a deliberate and persistent plan of evading a single major creditor – it has at least been alleged that the bankruptcy case has been filed in an attempt to frustrate Plaintiff's attempts to collect on the Settlement Stipulation, and Plaintiff is among the top three creditors in the case;

Factor #14 – there are multiple bankruptcy or other procedural "gymnastics" – it is arguable that the transfer of the Haverstraw properties to Lino Tognetti, and thence to a newly created corporate holding company, which promptly filed for bankruptcy relief with the sole purpose of selling the Haverstraw properties, which Plaintiffs held a Lis Pendens on, qualify as such "gymnastics."  It might be

argued that filing as a Chapter 11 Debtor, removing a state court action to the bankruptcy court, and then converting to Chapter 7, also falls within this "gymnastics" rubric – but there are facts that mitigate against this construction of the conversion, as stated.

The Court need not reach the merits of the dismissal argument because at the time of the conversion Plaintiffs offered no objection, and the conversion order entered on November 25, 2003, ECF Docket No. 26, case number 03-37171, has never been appealed from or challenged.  The Court will not now allow Plaintiffs to end-run around a two and one-half year-old conversion order by arguing that the conversion was improper and such improper conversion should be considered as grounds for dismissal.

Furthermore, the Court now holds that Plaintiff's dismissal motion is barred by the doctrine of laches.  Laches is an equitable doctrine "by which a court denies relief to a claimant who has unreasonably delayed in asserting the claim, when that delay has prejudiced the party against whom relief is sought." Black's Law Dictionary  891 (8th ed. 2004).  Laches has precluded dismissal of a bankruptcy case where delay has caused prejudice to the Debtor.  *See In re Shea & Gould*, 214 B.R. 739749 (Bankr. S.D.N.Y. 1997) (Chapter 11 Trustee's failure to file motion to dismiss until nineteen months after the bankruptcy filing precluded dismissal on a laches theory); *see also In re Cutillo*, 181 B.R. 13 (Bankr. N.D.N.Y. 1995) (Chapter 13 debtors were able to defeat Trustee's motion to dismiss their bankruptcy case upon a doctrine of laches defense where Trustee did not bring motion until 70 months after debtors defaulted on payments); *In re I.D. Craig Service Corp.*, 118 B.R. 335 (Bankr. W.D. Pa. 1990) (Motion to dismiss voluntary chapter 7 was barred by doctrine of laches when movant learned of filing within several days, but waited over one year before objecting.).

In this instance, Plaintiff Eric Ross was a listed creditor on Debtor's bankruptcy petition. He filed a motion to lift the automatic stay as early as November 10, 2003, *see* ECF Docket No. 13, case number 03-37171. He was originally named the chairman of the Debtor's official committee of unsecured creditors, ECF Docket No. 9. He participated in the LST bankruptcy filing, and received payment from the proceeds of the sale of the Haverstraw properties. He has filed multiple documents, and a separate adversary proceeding, case number 04-9165, without ever seeking the dismissal of the Chapter 7 case. All of the other factors said to mitigate in favor of dismissal have been known to Plaintiff for some period of time, dating back at least as far as 2004, since which time Plaintiff was an active participant in the LST and Tognetti bankruptcies, and a litigant in two adversary proceedings, one of which Plaintiff himself filed objecting to Debtor's discharge.

Debtor Jeffrey Tognetti has been prejudiced by Plaintiff's two and one half year delay in bringing a motion to dismiss. Debtor has been named as a defendant in two adversary proceedings not involving Plaintiff, and has been required to defend against Plaintiff's numerous pleadings and motions brought in the several cases, at no doubt a great personal and financial expense. Had Mr. Ross brought the motion to dismiss in 2004, and been successful, the Debtor, and indeed, other creditors of this Debtor who have filed adversary proceedings and been stayed from enforcing their rights for almost three years due to the operation of the automatic stay, would not have needed to go to the cost and expense of pursuing rights in the bankruptcy court. The Court therefore denies Plaintiff's request for dismissal, with prejudice, based on Plaintiff's unjustified delay in bringing this dismissal motion.

**The Plaintiffs' Motion with Regard to Denial of Debtor's Discharge and
Dischargeability of the Plaintiffs' Claims**

Plaintiffs' adversary proceeding 04-9165 contains three causes of action pursuant
to 11 U.S.C. § 523(a).  The first cause of action is brought pursuant to 11 U.S.C. §
523(a)(2)(A).  In that claim, Plaintiffs allege that Debtor represented that he could legally
conduct business as a securities trader and that he would distribute profits to the
Plaintiffs, and thereby induced the Plaintiffs to enter into a business arrangement with
Debtor. Plaintiffs allege that these representations were made purposefully and with the
intent to deceive, and Plaintiffs relied on such statements.  This debt was thus allegedly
incurred through false pretenses, false representations, and actual fraud.  Due to his
felony conviction, Debtor was not eligible to trade securities and this damaged Plaintiffs
because he failed to return the remaining capital contribution owed to Plaintiffs,
$127,000. The second cause of action is pursuant to 11 U.S.C. § 523(a)(4), for fraud or
defalcation while acting in a fiduciary capacity, avers that Debtor was entrusted with the
funds in the capital account and had a fiduciary duty to distribute to the Plaintiffs the
proceeds of the capital accounts upon termination of the business relationship.  Debtor
failed to return $127,000 to the Plaintiffs and has thereby violated his position of trust
and confidence and has breached the duties of an escrowee.  The third cause of action is
brought pursuant to 11 U.S.C. § 523(a)(6), and asserts that the Debtor willfully and
maliciously injured the Plaintiffs by unlawfully converting the Plaintiffs' funds in the
sum of $127,000 for his own use.  The complaint does not seek a global denied of the
Debtors' discharge pursuant to 11 U.S.C. § 727(a).

Debtor has filed an answer to the complaint, and asserts the following affirmative defenses: Failure to set forth facts sufficient to state a cause of action; that Debtor never acted in a fiduciary capacity with respect to any decisions between Plaintiffs and the State Court Defendants; Plaintiffs were experienced and sophisticated investors when entering into the transactions set forth in the complaint; the Debtor individually and as officer and/or member of the entities fully disclosed the nature of all transactions and their inherent risks to Plaintiffs; the Plaintiffs bargained for and received significant business opportunities and possible returns; and the Debtor was not a party to any of the agreements alleged in the complaint in his individual capacity.

The complaint was filed on the final day to object to discharge, November 19, 2004; as noted *supra*, the Plaintiffs were granted several months of extensions in which to file a complaint objecting to discharge or dischargeability.  Thus Plaintiff was obviously aware that any objection to Debtor's discharge needed to be filed by November 19, 2004.  It was not until January 10, 2006 that counsel for Plaintiff filed a proposed scheduling order on the Court's electronic filing system in the Section 523(a) action, and only after a motion to dismiss the adversary proceeding for failure to prosecute was filed by Debtor, *see* ECF Docket No. 16.  The proposed scheduling order has never been forwarded to this Court for consideration and signature.  Although counsel for Debtor and Plaintiffs have signed the order, which states that discovery was to be completed by March 31, 2006, to this Court's knowledge, no such discovery has taken place, let alone completed.

Furthermore, although Plaintiffs have denominated this motion as one for summary judgment, as the Court mentioned *supra* at footnote 4, Plaintiffs failed to

submit a Rule 7056-1 statement with the Second Summary Judgment Motion. This defect has not been cured by Plaintiffs' belated inclusion of a document, entitled "Plaintiff (sic) Statement of Undisputed Facts," which was served and filed with Plaintiffs Reply brief, because (a) Plaintiff was required to annex the 7056-1 statement to his motion, and (b) because the Plaintiffs' purported statement does not include citations to admissible evidence. Local Rule 7056-1(b) states that failure to submit a 7056-1 statement "…shall constitute grounds for denial of the motion." Indeed, given the delay and inaction in the Section 523(a) proceeding, the Court cannot grant Plaintiffs' Motion for Summary Judgment as to dischargeability as the Court has not been provided with a timely, sufficient Statement of Undisputed Facts that includes citation to admissible evidence, and it is not clear that *any* fact discovery has occurred in this adversary proceeding, let alone enough to provide this Court with a sufficient factual basis to allow the Court to make the determinations necessary with regard to the causes of action alleged. The Court therefore orders the parties to appear for a pre-trial conference on July 25, 2005, at 11:30 a.m., to discuss the implications of this memorandum decision, possibly to enter into a revised scheduling order and to set a tentative date for trial of the issues in the dischargeability proceeding.

For the first time in this Summary Judgment Motion, Plaintiff also seeks an order denying Debtor's discharge pursuant to 11 U.S.C. § 727(a). The deadline to object to Debtor's discharge was November 19, 2004, as Plaintiff was well aware, having sought, and received, several extensions of that deadline. Although Plaintiff has indicated an intention to file a motion to amend their Complaint in the § 523(a) action to add causes of action seeking a denial of discharge, a § 727(a) action would still be untimely, and such

un-timeliness may be raised as a defense to the complaint.  *See Kontrick v. Ryan*, 540
U.S. 443 (2004).    Under *Ryan*, the bankruptcy court has no discretion to extend such
deadlines. The Court awaits the Plaintiff's motion to amend his complaint; and although
amendment of the Complaint might well be a futility given that the deadline to object to
Debtor's discharge has lapsed.  Under Fed. R. Bankr. P. 4004 as interpreted by *Ryan*, the
Court cannot grant Plaintiffs' request for an order denying Debtor's discharge when such
request is untimely at this point.

**Request for Disqualification of Harvey Barr, Esq. as Debtor's counsel**

Plaintiff seeks disqualification of Debtor's counsel because Plaintiffs contend that
Mr. Barr should serve as a witness in this adversary proceeding as to, *inter alia*, his role
in the formation of a certain post-petition corporation.  As it is the opposing party that
seeks to call counsel as a witness, New York Code of Professional Responsibility DR 5-
102(B) applies.

> Lawyers as Witness. Neither a lawyer nor the lawyer's firm shall accept
> employment in contemplated or pending litigation if the lawyer knows or
> it is obvious that the lawyer or another lawyer in the lawyer's firm may be
> called as a witness on a significant issue other than on behalf of the client,
> and it is apparent that the testimony would or might be prejudicial to the
> client.

The test applied by courts in New York in determining whether counsel should be
disqualified as a witness under this provision was first articulated by the New York Court
of Appeals in *S&S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, 515 N.Y.S.2d 735,
739 (1987).  That case held that counsel's testimony may even be "[r]elevant and even
highly useful, but still not strictly necessary.  A finding of necessity takes into account
such factors as significance of the matters, the weight of the testimony, and availability of
other evidence." *Id.*

36

> Under *S & S Hotel Ventures*, the critical question is whether the subject
> testimony is 'necessary,' taking into account such factors as 'the
> significance of the matters, weight of the testimony, and availability of
> other evidence.' If the testimony is 'necessary' then the attorney 'ought to'
> testify and must be disqualified. Although the *S & S Hotel Ventures*
> decision did not specifically address Disciplinary Rule 5-102(B), there is
> no question that matters arising under that Rule are determined in
> accordance with the 'ought to' testify and 'necessary' testimony standard
> elucidated in *S & S Ventures*.

*See Rosefield v. Orentreich*, 1998 WL 567750 at *4 (S.D.N.Y. Sept. 4, 1998)
citing S*&S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, *supra*.

> In addition, because motions to disqualify are often made for tactical
> purposes, they are disfavored and subject to strict scrutiny. The proponent
> of disqualification bears a 'heavy burden' of proof to show that counsel's
> testimony is necessary. The requirement of adversity has been stated as
> follows: the attorney's testimony must be 'so adverse to the factual
> assertions or account of events offered on behalf of the client as to warrant
> his disqualification.' Finally, the New York Court of Appeals instructs that
> the Code of Professional Conduct is to be construed flexibly so as to
> provide 'guidance for the courts in determining whether a case would be
> tainted by the participation of an attorney or a firm' rather than as an
> inflexible rule."

*Id.* at *5.

Plaintiffs here do not meet their burden of showing that the Harvey Barr's

testimony is necessary to the litigation, and indeed, do not even allege that the

information that Mr. Barr would testify to is not available from some other

source, such as Debtor, Matthew or Leno Tognetti, or Ms. DeMelo.  Additionally,

the proffered testimony relates to the formation of a corporate entity post petition,

in connection with which Ms. DeMelo permitted Debtor to use the Stony Point

property as collateral to obtain financing. This testimony will not be necessary to

the resolution of the fraudulent conveyance adversary proceeding, however,

because the Court has already indicated that it will permissively abstain and allow

Plaintiff to seek to enforce the Settlement Stipulation in the state court.  Plaintiffs'

election to pursue their rights pursuant to the Settlement Stipulation precludes litigation of the underlying fraudulent conveyance claim, and thus no testimony is anticipated on this subject. Thus, it is extremely unlikely that Mr. Barr will be called as a witness at all in connection with this adversary proceeding. Furthermore, the Court has denied Plaintiff's Motion to Dismiss and Mr. Barr's testimony relevant to Debtor's good faith won't be needed, either. The Plaintiffs' motion to disqualify Mr. Barr is therefore, denied, in its entirety.

## CASE MANAGEMENT ISSUES

The tone of this memorandum decision may hint at the difficulties this Court has encountered in administering this case. The Court has determined that the issuance of a case management order to govern the related proceedings is appropriate. The case management order will require, among other things, that:

- All motions filed pertaining to a particular case be filed separately from motions seeking relief in any case with a separate case number assigned by the bankruptcy court clerk's office;

- All motions filed in any of the Tognetti matters must be filed on the correct docket *only*, and not every docket, and not on an incorrect docket;

- Any motion not filed on a correct docket, or filed in every docket, will not be cognizable to this Court. This includes matters currently pending and filed incorrectly; and

- Notice periods provided for in the Fed. R. Bankr. P. or otherwise are to be strictly complied with, including time periods in which to serve and/or file reply, rebuttal, or opposition papers.

38

- Late filed papers will not be cognizable to the Court.

## **<u>CONCLUSION</u>**

Plaintiff's motion is granted in part, and denied in part, as set forth above.  Steven

Landy, Esq., is directed to submit an order consistent with this memorandum opinion

within ten (10) days of entry of this Order.

Dated: Poughkeepsie, New York          <u>/s/ CECELIA G. MORRIS</u>
       June 21, 2006                         CECELIA G. MORRIS, U.S.B.J.